CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY *v.* BOYLES.

4-7639                                    187 S. W. 2d 719

Opinion delivered May 21, 1945.

*Thos. S. Buzbee* and *Edward L. Wright,* for appellant.

*G. B. Colvin,* for appellee.

SMITH, J. A mule belonging to appellee became lodged between the ties of a trestle of appellant railway company near Ledwidge, Perry county. The animal could not extricate itself, all four legs being caught, and in this position it was discovered by a track patrolman of the railway company, Herbert Adams, at approximately 11:00 p.m. The streamlined Choctaw Rocket passenger train, westbound, arrived shortly thereafter and was flagged by Adams. This train of six cars was carrying between 215 and 225 passengers. Approximately 70 of the passengers were soldiers. The train conductor, other members of the crew, an army officer, and others, appraised the situation and decided that the only method of removing the mule was to kill him and cut off his legs. At the direction of the army officer and the conductor, a soldier on the train shot the mule, following which his legs were chopped off with an ax. A number of civilians, soldiers and sailors assisted the crew in rolling the body of the animal off the trestle.

At the time the mule was discovered by the patrolman all four of his legs were straight down between the ties. The animal was flopping his head back and forth between the north rail and a guard rail so that blood was issuing from his nose and ears.

Suit was instituted on the theory that the employees of the railway company were negligent in procuring the killing of the mule, the allegation being that "said mule was not injured to the extent that it could not have been saved, and that it was the duty of the defendants to remove said mule from its situation."

From a verdict and judgment in favor of the owner of the mule is this appeal.

The conductor in charge of the train testified that owing to the situation of the mule, it was his opinion, and that of passengers with whom he advised, that it

could not be extricated except by the use of wrecker apparatus, which was not available, and could have only been secured from Little Rock, 34 miles away, and that as much as three hours would have been required for that purpose, and that it was thought that before the expiration of that time the mule would have died in its frantic attempts to extricate itself.

The mule had flailed its head against one of the track rails and guard rail on the trestle until it was bleeding both at its nose and ears. Actually no attempt to release the mule was made, and the explanation of this failure was that the mule was so frantic, and was flailing its head so violently that it would have been dangerous to touch it.

We are unable to say, as a matter of law, that this was necessarily true, and the jury has found otherwise. The cause was submitted under an instruction to which no objection was made, in which the jury was told that: ". . . if the circumstances were such that they acted as reasonable men would have acted under like or similar circumstances then they would not be liable. You will take into consideration the circumstances surrounding the situation, and if they (the conductor and others acting under his orders) acted as a reasonable person would have acted under like or similar circumstances then they would not be liable."

It was the duty of the train crew to liberate the mule if this could have been reasonably done, and the fact that it would have required time and would have delayed the train is no excuse for a failure to do so. Whether the attempt would have involved a risk of personal injury so great that a reasonably prudent person would not have undertaken it was, we think, a question to be decided by the jury, and not by ourselves.

In the case of *Earl* v. *St. Louis, I. M. & S. R. Co.*, 84 Ark. 507, 106 S. W. 675, Judge BATTLE said: "Injuries to animals may occur without contact or collision with running trains, of which the proximate cause may be the negligence of the railway company or its employees, in

which cases there would be a right to recover damages, but not under the statute." (§ 11148, Pope's Digest.)

Here, there is no evidence that the mule was injured through the operation of a train, nor is there presented any question of the failure of the railroad company to inclose its right-of-way. The sole question submitted to and decided by the jury was whether there was a negligent failure to attempt the extrication of the mule, and in our opinion the testimony was sufficient to justify the submission of this question.

At § 1529 of the Chapter on Railroads, 52 C. J. 61, it is said: *"Negligence in Extricating Animals.* Where animals are injured in being extricated from bridges and trestles, if the action is based upon the neglect of the railroad to fence its track, the liability will depend upon whether under the particular statute an actual collision between the train and animal is necessary to render the company liable. In an action not based upon such a statute plaintiff may recover if the injury was due to negligence on the part of the company's servants; but the company will not be liable if reasonable care and diligence was used, although by extraordinary diligence and the use of different means it might have been possible to extricate the animal without injury."

Here, as we have said, there was no attempt to extricate the mule, and we conclude, therefore, that the case should have been submitted to the jury, and the judgment rendered upon the verdict is affirmed.

SMITH, C. J., dissents.