WILLIAM SMITH *vs.* MINNEAPOLIS & ST. LOUIS RAILWAY COMPANY.

June 14, 1887.

**Railway Company—Fencing—Depot Grounds.**—A railway company is not required to fence grounds needed and actually used for depot purposes, and required by public necessity and convenience to be left open; following former decisions.

**Same—Duty to Abutting Land-Owner.**—The statute requiring railways to be fenced is not a law for line or partition fences, but a police regulation, the object of which is to *inclose* the roads so that cattle cannot get upon them; and when station grounds are required by public necessity or convenience to be left uninclosed, a railway company owes no duty to the owner of abutting land to build a fence between his land and such station grounds.

Appeal by defendant from an order of the district court for Waseca county, *Buckham,* J., presiding, refusing a new trial after a verdict for plaintiff.

*B. S. Lewis,* for appellant.

*Washburn & Maddox,* for respondent.

MITCHELL, J. The station and depot grounds of defendant in the village of New Richland extend north and south from the south line of Butler street to the north line of Langdon street, a distance of some four blocks. The width of these grounds east and west is about 300 feet. They are traversed their entire length by defendant's main track and switch or "business" track, along which are situated depot or station houses, warehouses, elevators, a mill, lumber yards, etc. The village lies on both sides of the station. Several cross-streets run up to the east and west lines of the depot grounds, and are used by the public as means of access to the station. Some parts of these grounds are more used than others, but the evidence is undisputed

that the whole is a *public* place, and in practical use by the public in receiving and delivering freight, and in transacting business with the railway company. The plaintiff owned two lots abutting on these station grounds, between Butler and Washburn streets, two of the cross-streets already referred to. From these lots plaintiff's horse strayed and got upon the railway track within the limits of the depot grounds, and was killed by a passing engine.

The negligence charged against defendant was its failure to fence the road, and, as the case was submitted to the jury, the sole ground upon which a recovery was had against it was that it ought to have built a fence between plaintiff's lots and the depot grounds. The theory upon which the court below submitted the case to the jury seems to have been that although the railway company had a right to leave these depot grounds *uninclosed*, for the convenience of the public, yet it would be required to build a fence between plaintiff's land and the depot grounds, provided such fence would not have interfered with the use of such grounds by the company and the public; and he left it to the jury to determine, as a question of fact, whether such a fence would have interfered with the reasonable and proper use of the depot grounds.

Inasmuch as neither the company nor the public had a right of access to the depot over the land of plaintiff, the jury could answer the question only in the negative, and, as a necessary corollary from that, find that the company was bound to build the fence referred to, although it would not inclose any part of its road. We think that in this the court erred. It is true that this court, in holding that a railroad company was not bound to fence station or depot grounds required to be left open by public necessity or convenience, also held that the public convenience was the limit of the exception. *Greeley* v. *St. Paul, M. & M. Ry. Co.*, 33 Minn. 136, (22 N. W. Rep. 179;) *Kobe* v. *Northern Pac. R. Co.*, 36 Minn. 518, (32 N. W. Rep. 783.) That is the test by which to determine what parts of the road may be left *unfenced*. But it must be remembered that the statute requiring railway companies to fence their roads is not a partition or line fence law, but a police regulation, the object of which is to *inclose* the roads so that cattle cannot get upon them. *Gillam* v. *Sioux*

*City & St. P. R. Co.*, 26 Minn. 268, (3 N. W. Rep. 353.) This duty is imposed for the benefit of the public at large, and is just as obligatory where the abutting premises are uninclosed as when inclosed; and when station or depot grounds are required to be left open and uninclosed, for the convenience of the public, a railway company owes no duty to the owner of abutting lands to build a detached piece of fence (which incloses no part of the railroad) on the line between such station grounds and the abutting premises. *Indiana, etc., Ry. Co.* v. *Leak,* 89 Ind. 596; *Wabash, etc., Ry. Co.* v. *Nice,* 99 Ind. 152. The court ought to have so instructed the jury, instead of leaving the question to their determination as one of fact.

Order reversed.

DICKINSON, J. I dissent. The statutory duty imposed upon the defendant to construct and maintain fences along the line of its road is in terms absolute. By construction, a qualification or exception is implied as respects localities where fences cannot be maintained without interfering with the public service to which these roads are devoted; but this implied exception extends no further than is required by the considerations of necessity, upon which alone it rests. There was no reason shown in this case why the defendant might not have fenced that part of its line upon which the plaintiff's land abutted. This was private property, and neither the public nor the railroad company could use it. A fence would not have interfered with the rights or the convenience of either the public or the railroad company. The statute was therefore obligatory upon the defendant, according to its terms; and, if the injury complained of resulted from the neglect of the defendant to comply with the statutory requirement, the defendant was responsible.

The statutory obligation in respect to fencing involves, not alone a duty to the public travelling upon the railway, but as well a duty to the owner of the adjacent lands. One purpose of the statute was the protection of the owners of domestic animals along the line of the road. *Shepard* v. *Buffalo, N. Y. & Erie R. Co.,* 35 N. Y. 641; *Tracy* v. *Troy & Boston R. Co.,* 38 N. Y. 433. This purpose in the statute, and this duty towards the adjacent proprietor, have been rec-

ognized, as I think, in the numerous decisions of this court holding railroad corporations chargeable with negligence, as respects an adjacent proprietor, for its failure to fence, and maintaining the right of such persons to recover for injuries to, or the death of, their domestic animals, resulting from such neglect. And in *Emmons* v. *Minn. & St. Louis Ry. Co.*, 35 Minn. 503, (29 N. W. Rep. 202,) damages were deemed recoverable on account of the impairment of the usefulness of a farm for grazing purposes, by reason of the neglect of the defendant to maintain a fence; the court saying that the object of the statutory requirement (Gen. St. 1878, *c.* 34, § 57) was "to prevent, as far as possible, injury to them [adjacent lands] from maintaining and operating a railroad through or along-side of them." If the railroad company owed this duty to the adjacent proprietor,—if, as respects him, the statute imposed the duty to fence,—it follows that it is answerable for injuries resulting from a disregard of that duty and obligation.